United States District Court

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KAISER FOUNDATION HOSPITALS, a
California Nonprofit Public Benefit
Corporation, d/b/a Kaiser Permanente
San Francisco Medical Center,

       Plaintiff,

  v.

MICHAEL O. LEAVITT, Secretary of the
United States Department of Health
and Human Services,

       Defendant.

_____/

No. C 05-3143 CW

ORDER ON CROSS-
MOTIONS FOR
SUMMARY JUDGMENT

    Plaintiff Kaiser Foundation Hospitals moves for summary

judgment.  Defendant Michael O. Leavitt, Secretary of the United

States Department of Health and Human Services, opposes this motion

and cross-moves for summary judgment.  Plaintiff opposes that

motion.  As Defendant notes, although the parties have styled their

papers as cross-motions for summary judgment, this is a proceeding

for judicial review of a final administrative decision.  Plaintiff

seeks to set aside Defendant's decision setting its Medicare

reimbursement rate for kidney dialysis treatment at $212.81;
Plaintiff contends that its reasonable cost is $476.15 per
treatment.   The parties appeared before the Court on September 8,
2006, and agreed that the case should be decided on the record,
without a trial.  Having considered the parties' papers, the record
and oral argument, the Court grants both Plaintiff's and
Defendant's motions in part and denies each in part.

BACKGROUND

Plaintiff is a non-profit public benefit corporation that
operates Kaiser Permanente San Francisco Medical Center, a
Medicare-certified hospital located in San Francisco, California.
The Kaiser Permanente San Francisco Medical Center treats patients
with End Stage Renal Disease (ESRD), an irreversible kidney
impairment requiring blood filtering dialysis or kidney transplant;
if untreated, ESRD is life-threatening.  One of the services
covered under Medicare is outpatient kidney dialysis for patients
with ESRD.  Persons with ESRD qualify for services under Medicare
regardless of their age; nearly all, if not all, ESRD patients are
Medicare patients.

Through the Health Care Financing Administration (HCFA),[1] the
agency that administers the Medicare program, Health and Human
Services provides Medicare reimbursements to providers, such as
Plaintiff, for outpatient ESRD treatments for qualifying Medicare
patients.  Previously, providers were reimbursed by Medicare for

---

[1] As Plaintiff notes, the facts relating to this appeal
occurred before the HCFA was renamed Centers for Medicare and
Medicaid Services (CMS).  For convenience, the Court will use HCFA
to refer to, and include, CMS.

outpatient ESRD services on a reasonable cost basis.  But, under the Omnibus Budget Reconciliation Act of 1981, the reasonable cost reimbursement was replaced by a prospectively determined rate of reimbursement for each dialyses treatment.  Pub. L No. 97-35; 42 U.S.C. § 1395rr(b)(7) (1982).[2]  According to this new reimbursement process:

> The Secretary shall provide by regulation for a method (or methods) for determining prospectively the amounts of payments to be made for dialysis services furnished by providers of services . . . . Such method (or methods) shall provide for the prospective determination of a rate (or rates) for each mode of care based on a single composite weighted formula (which takes into account the mix of patients who receive dialysis services at a facility or at home and the relative costs of providing such services in such settings) for hospital-based facilities and such a single composite weighted formula for other renal dialysis facilities, or based on such other method or combination of methods which differentiate between hospital-based facilities and other renal dialysis facilities and which the Secretary determines, after detailed analysis, will more effectively encourage the more efficient delivery of dialysis services and will provide greater incentives for increased use of home dialysis than through the single composite weighted formulas.  The Secretary shall provide for such exceptions to such methods as may be warranted by unusual circumstances.

Pub L. No. 97-35; 42 U.S.C. § 1395rr(b)(7).

Pursuant to this authority, Health and Human Services adopted regulations for reimbursement of outpatient ESRD services based on a "composite" or prospectively determined per-treatment rate.  In addition, HCFA promulgated various provisions in a Provider Reimbursement Manual.  Under these regulations and provisions, providers have to accept the prospective payment determined by HCFA as payment in full for covered outpatient maintenance dialysis.

---

[2]All references to 42 U.S.C. § 1395rr and sections of Title 42 of the Code of Federal Regulations are to their respective versions in effect at the time of the events at issue.

United States District Court

For the Northern District of California

But the regulations and provisions also provide a process through which providers can request an exception to the standard composite rate, resulting in a higher per-treatment rate. The provider begins the process by filing a request with its Medicare fiscal intermediary, which then reviews and makes recommendations on rate exception requests and forwards requests to HCFA. If HCFA does not deny a rate exception request within sixty working days, the rate exception request is deemed approved. Under 42 C.F.R. § 413.170(g), HCFA approves an exception to the prospective payment rate when the provider "demonstrates with convincing objective evidence that its total per-treatment costs are reasonable and allowable under § 413.174, and that its per-treatment costs in excess of its payment rate are directly attributable" to "atypical service intensity." After approval, the exception rate is provided for a predetermined period of time; then the provider has to file a new exception request. HCFA's determinations on ESRD composite rate exception requests are subject to review by the Provider Reimbursement Review Board (the Board), consisting of five individuals knowledgeable in reimbursement matters. The Board's decision is subject to review by the HCFA Administrator, who can reverse, modify or adopt the Board's decision. The Administrator's decision is final, subject to district court review.

In 1987 and 1988, Plaintiff submitted exception requests, contending that, because it exclusively treated an atypical patient population, it was entitled to payment higher than the standard composite rate. The HCFA denied most of Plaintiff's exception requests. On review, however, the Board found that Plaintiff

4

United States District Court

For the Northern District of California

exclusively served an atypical patient population and had done so since its inception in 1969 or 1970; it granted Plaintiff most of the costs requested in the exception requests. As part of a settlement agreement between Plaintiff and Aetna Life and Casualty Company, HCFA agreed to pay Plaintiff $250 per dialysis from the date of Plaintiff's first exception request, March 24, 1987. HCFA continued to pay Plaintiff $250 per dialysis treatment until April 29, 1994.

At the end of 1993, HCFA informed Plaintiff that it was reopening the exception process and that Plaintiff could request a new exception rate by submitting an exception request on or before April 29, 1994. Providers which did not submit an exception request would be limited to $139 per treatment.

On March 22, 1994, Plaintiff filed its seventh exception request. It was returned by the intermediary who indicated that additional and modified information was needed. On April 21, 1994, Plaintiff submitted its revised exception request, seeking $337.15 over and above the composite rate of $139 for a total reimbursement of $476.15 per treatment. The 1994 exception request, which is the basis of Plaintiff's challenge, was based on the following:

1. Plaintiff projected that it would incur $187.67 in labor costs per treatment, including the salary and employee benefits for the registered nurses, nursing supervisor, clinical dietician, unit assistant and physician medical director; the labor component of the composite rate was $47.

2. Plaintiff projected that it would incur $51.82 in supply costs; the supplies component of the composite rate was $33.

**United States District Court**
For the Northern District of California

3.  Plaintiff projected that it would incur $239.66 in overhead costs; the overhead component of the composite rate was $47.

HCFA found that Plaintiff "presented convincing evidence that it rendered a substantial number of treatments to patients requiring more intense care during outpatient maintenance dialysis service, and that it incurs higher than average per-treatment costs for rendering these intense services."  AR 1037.  But, HCFA only granted Plaintiff a rate of $199.56.  AR 1040.  That rate consisted of the $139.00 as the base composite rate plus $46.33 for additional salaries, $8.66 for additional employee benefits, and $5.57 for additional supplies.  HCFA explained that, in accordance with section 2721.B of the Provider Reimbursement Manual,[3]

> when a facility submits documentation that does not identify both the specific additional items and/or services rendered which are in addition to a routine dialysis service and the incremental costs of these items and/or services, that facility will not qualify for an exception under the atypical patient mix criterion.  Therefore, we are unable to recognize these high costs for an exception to the composite rate.

Id.

Not satisfied with $199.56, which was less than half of what it requested, Plaintiff appealed HCFA's determination to the Board. After an evidentiary hearing, the Board granted Plaintiff a rate of $299.93.

_____

[3]Section 2721.B of the manual provides:
The facility must provide written justification for supporting the facility's higher costs.  The fact that a facility projects costs higher than its composite rate payment is not adequate documentation for granting an exception.  The facility must provide HCFA with supporting material documenting the reasons that may justify its costs in excess of its composite payment rate.

6

United States District Court

For the Northern District of California

Specifically, the Board found that, with respect to labor costs, HCFA erred in calculating the cost of nursing hours. HCFA divided nursing salaries by "nursing hours paid" to determine the average hourly nursing rate. It then multiplied that rate times the "nursing hours worked" on dialysis treatments to calculate the costs per treatment for nursing salaries. While "nursing hours paid" included hours worked, as well as hours of paid vacation, holiday and sick time, "nursing hours worked" did not account for vacation, holiday and sick time earned for those hours. The Board concluded that, by using nursing hours paid in calculating the hourly rate and but using nursing hours worked in calculating the reimbursement amount, the HCFA improperly failed to reimburse the vacation, sick and holiday time Plaintiff paid to its nursing staff. Correcting that error, the Board determined that Plaintiff was entitled to an exception amount of $62.13 for nursing salaries, $15.80 more than the additional $46.63 the HCFA granted.

With respect to non-nursing labor cost, the Board found that Plaintiff submitted sufficient documentation to support some of its claims. For example, the Board determined that Plaintiff was entitled to an additional $1.55 per treatment for the services of a clinical dietician and an additional $4.95 per treatment for administrative support. But the Board denied any additional reimbursement for management costs, finding that Plaintiff did not provide convincing evidence that additional management costs were attributed to patient atypicality.

The Board further found that, in calculating the exception amount for employee benefits, HCFA should not have used the

national average employee benefit percentage and instead should have used Plaintiff's actual employee benefit percentage.  Using the actual benefit percentage, the Board found that the exception amount should be $15.28 per treatment.

With respect to supply costs, the Board found that Plaintiff provided specific rationale and data to support its additional supply costs; it approved $51.82 in supply costs, the entire amount Plaintiff requested.

As for overhead costs, the Board found that, for Medicare cost reporting purposes, the cost of delivering services includes the direct costs incurred for labor and supplies and the indirect costs, or overhead, incurred for such expenses as administrative and general costs, housekeeping, equipment, laundry and linen.  The Board agreed with Plaintiff that Plaintiff had "presented evidence that its overhead costs are related to the atypical patients, and that there is no such incremental requirement in the Medicare regulations and Manual provisions."  AR 98.  Concluding that it is not possible to link overhead costs directly to a particular service, the Board ruled that Plaintiff was entitled to a 56.5 percent overhead exception amount, totaling $105.20, for all approved direct cost exception amounts.  The Board calculated the 56.5 percent by dividing 47, which represents the $47 composite rate for indirect overhead costs, by 83, which represents the $83 composite rate for direct costs.

HCFA requested review of the Board's decision, arguing that the Administrator should reverse the decision.  Plaintiff submitted a letter to the Administrator requesting that the Administrator

United States District Court

For the Northern District of California

8

United States District Court

For the Northern District of California

modify the Board's opinion to grant it the full amount of its
requested exception to the ESRD composite rate.  The Administrator
agreed to review the Board's decision.

After reviewing the comments provided by Plaintiff and HCFA,
the Administrator issued his decision, the final agency decision,
granting Plaintiff a $212.81 per-treatment ESRD exception rate.
Like the Board, the Administrator found that the record supported
the finding that Plaintiff serves an atypical patient mix
population.  After reaching that conclusion, however, the
Administrator stated that "in addition to demonstrating that it
serves an atypical patient mix, the Provider must also demonstrate,
inter alia, that the costs are reasonable and that the elements of
excessive costs are specifically attributable to the Provider's
atypical patient mix."  AR 9.  The Administrator concluded that,
for the most part, Plaintiff failed to show that the costs are
specifically attributable to the atypical patient mix, and affirmed
only the Board's determination on supply costs.[4]

With respect to nursing labor salary costs, the Administrator
disagreed with the Board's determination, stating that HCFA "has
consistently used 'nursing hours worked' to determine the average
nursing hours per treatment and 'nursing hours paid' to determine
the average hourly rate for an ESRD unit."  AR 9.  Concluding that
there is nothing inherently inconsistent in this methodology, the
Administrator determined that Plaintiff was entitled to an
exception of only $46.33 for nursing salaries.

_____

[4]Neither party contests the Administrator's conclusion
regarding supply costs.

1   The Administrator further determined that HCFA properly

2   concluded that the excess cost of non-nursing labor should not be

3   included in the exception because Plaintiff failed to provide

4   written justification supporting its higher costs.

5      With respect to employee benefits, the Administrator reversed

6   the Board's decision, concluding that HCFA did not improperly deny

7   Plaintiff's full exception for excess employee benefits.  The

8   Administrator again concluded that Plaintiff failed to show that

9   the extra costs are specifically attributable to its atypical

10  population mix: "As reflected by the record, the Provider's

11  exception request is absent of documentation which links the

12  excessive employee benefits costs" above the 18.7 percent national

13  employee-benefits average.  AR 10.

14     The Administrator also reversed the Board's decision

15  concerning overhead costs, again concluding that Plaintiff failed

16  to substantiate its claims that excess overhead costs directly

17  relate to its atypical patients.  The decision stated:

18      That Administrator finds that the Provider's general contention
        that certain overhead costs must follow higher direct costs is
19      contrary to the specific requirements of the regulations and
        manual and likewise is not supported by the record.  Contrary
20      to the specific regulatory requirements and PRM instructions,
        the Provider offered no documentation, other than general
21      statements, to identify its higher overhead costs and the link
        to its atypical patient mix.  Simply because the Provider has
22      an atypical patient mix does not demonstrate that its overhead
        costs are "directly attributable" to the provision of atypical
23      services.

24  AR 13.

25     Plaintiff now seeks judicial review of this final decision,

26  and requests that the Court overturn that decision and grant the

27  full amount of the exception it seeks, $476.15 per treatment.

28                              10

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

STANDARD OF REVIEW

The Court reviews Plaintiff's challenge to the final decision under the Administrative Procedure Act (APA).  42 U.S.C. § 1395oo(f)(1); 5 U.S.C. § 706.  Under the APA, courts "hold unlawful and set aside" only agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); Thomas Jefferson University v. Shalala, 512 U.S. 504, 512 (1994).  The Supreme Court instructs that courts "must give substantial deference to an agency's interpretation of its own regulations."  Thomas Jefferson University, 512 U.S. at 512.  In reviewing a plaintiff's challenge, a court's "task is not to decide which among several competing interpretations best serves the regulatory purpose.  Rather, the agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation."  Id. (inner quotations and citation omitted).  Thus, the Supreme Court requires courts to "defer to the Secretary's interpretation unless an 'alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation.'"  Id. (quoting Gardebring v. Jenkins, 485 U.S. 415, 430 (1988)).

Although a court's review of a plaintiff's challenge is a "narrow one," it is required to "engage in a substantial inquiry" and conduct "a thorough, probing, in-depth review."  Native Ecosystems Council v. U.S. Forest Serv., 418 F.3d 953, 960 (9th Cir. 2005) (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415-16 (1971), overruled on other grounds by

11

**United States District Court**

For the Northern District of California

Califano v. Sanders, 430 U.S. 99, 105 (1977)).  To determine whether an agency action was arbitrary and capricious, the court must "determine whether the agency articulated a rational connection between the facts found and the choice made."  Ariz. Cattle Growers' Ass'n v. U.S. Fish and Wildlife, 273 F.3d 1229, 1236 (9th Cir. 2001).  As long as the agency decision was based on a consideration of relevant factors and there is no clear error of judgment, the reviewing court may not overturn the agency's action. Id. (citing Am. Hosp. Ass'n v. NLRB, 499 U.S. 606 (1991)).  In particular, the reviewing court must defer to the agency's decision when the resolution of the dispute involves issues of fact or when a complex and highly technical regulatory program, like Medicare, is involved.  Thomas Jefferson Univ., 512 U.S. at 512; see also Marsh v. Or. Natural Res. Council, 490 U.S. 360, 377 (1989). Accordingly, the court may set aside only those conclusions that do not have a basis in fact, not those with which it merely disagrees. Ariz. Cattle Growers' Ass'n, 273 F.3d at 1236.

DISCUSSION

Plaintiff argues that it has met all the requirements for receiving an ESRD exception in the full amount it requested by showing that its increased costs are reasonable and directly attributable to its atypical patients.  Its argument rests, in part, on the definition of the phrase "directly attributable."  The Court first addresses Plaintiff's challenge to the meaning of that phrase before addressing the two categories of contested costs: labor and overhead.  The Court will then address Plaintiff's argument that Defendant's decision to grant Plaintiff an exception

**United States District Court**
For the Northern District of California

of less than $250 per treatment is arbitrary and capricious.

I. "Directly attributable"

To be granted an exception, a provider must demonstrate "with convincing objective evidence" that its per-treatment costs are reasonable and "directly attributable" to an atypical patient mix. 42 C.F.R. § 413.170(f)(6). The phrase "directly attributable," which is used synonymously with the phrase "specifically attributable," however, is not expressly defined in the Medicare regulations or provisions. Plaintiff argues that, because "directly attributable" is not defined, the Court should construe the term in accordance with its "common meaning," and as Plaintiff believes it should be construed. See Cleveland v. City of Los Angeles, 420 F.3d 981, 989 (9th Cir. 2005) ("To determine the meaning of a term in a federal regulation, we look to the common meaning of the word.").

Plaintiff minimizes the deference owed to Defendant's interpretation, especially in cases involving Medicare's "complex and highly technical regulatory program." Alhambra Hospital v. Thompson, 259 F.3d 1071, 1074 (9th Cir. 2001). Instead, citing Alhambra Hospital, Plaintiff argues that an agency is not entitled to deference where a regulation is plain on its face. In Alhambra Hospital, the Ninth Circuit instructed that courts "must defer to an agency's interpretation unless an 'alternate reading is compelled by the regulation's plain language.'" 259 F.3d at 1074 (quoting Thomas Jefferson Univ., 512 U.S. at 512). Here, an alternate reading is not compelled by the plain language of the term.

13

**United States District Court**
For the Northern District of California

As Plaintiff acknowledges, there are numerous definitions for the word "directly," and thus various "common meanings." Plaintiff uses the definition "without anyone or anything intervening" found in the American Heritage College Dictionary (3d Ed. 1997), noting that the word is synonymous with immediately. Another definition for "directly" is "exactly; precisely." See Random House College Dictionary (1982). Plaintiff states that the plain meaning of the term "directly attributable" requires that providers demonstrate a cause for increased per-treatment costs that is immediate, as opposed to remote. The plain meaning, however, could also require that providers demonstrate a cause for increase per treatment that is exact and precise. Plaintiff's argument, that the Court owes no deference to Defendant's interpretation of the regulation and phrase "directly attributable" because they are plain on their face, fails.

Plaintiff's argument that Defendant's interpretation of "directly attributable" is unreasonable is similarly unpersuasive. Plaintiff states that Defendant requires providers to submit documentation that incrementally links the particular cost item to the atypicality of patients in order to show that increased costs are directly attributable to an atypical patient mix. According to Plaintiff, general Medicare cost reporting principles do not require that providers directly link certain costs with the precise service rendered and, thus, Defendant's interpretation is unreasonable.

The Court, however, finds that Defendant's stringent definition of "directly attributable" is not inconsistent with the

14

**United States District Court**

For the Northern District of California

prospective rate reimbursement scheme Congress designed to create more efficient delivery of dialysis services, or with any Medicare regulation or provision.  Plaintiff's definition, under which a provider's costs would be deemed "directly attributable" to its atypical service intensity as long as the provider demonstrated more than just a tenuous causal relationship between its increased costs and atypical patients, is inconsistent with Congress' intent to revamp the former reasonable cost system and implement a cost-savings system, under which exceptions are warranted only in unusual circumstances.  Because Plaintiff does not show that Defendant's interpretation of "directly attributable" and "specifically attributable" is unreasonable or inconsistent with the plain meaning of the phrases, the Court finds that Defendant's interpretation, albeit exacting, is entitled to deference.

II.  Labor costs

     In its exception request, Plaintiff projected that it would incur a total of $137.67 in labor costs per treatment, attributable to its atypical service intensity.  These additional labor costs include salary and employee benefits for registered nurses, and for a nursing supervisor, clinical dietician, unit assistant and physician medical director.  Plaintiff argues that Defendant's denial of the majority of Plaintiff's requested amount was arbitrary and capricious because Defendant used an improper methodology to calculate nursing salary costs, refused to include any labor costs for Plaintiff's non-nurse employees, and limited Plaintiff's employee benefits costs based on an unsupported national average for employee benefit costs.

15

United States District Court

For the Northern District of California

A.   Nursing salary

In calculating the cost per treatment for nursing salaries, the HCFA used "nursing hours paid" to determine the "average nursing hours rate" and then multiplied that rate by the "nursing hours worked."  As explained above, the hourly rate was calculated based on "nursing hours paid" which included the amount paid to the nursing staff for time worked as well as for vacation, holiday and sick time.  "Nursing hours worked," however, included only the hours actually worked.

As noted above, Defendant approved that methodology. Plaintiff, however, argues that there is no rational basis for excluding the additional vacation, sick and holiday time for which it must pay because of the additional hours worked.  It notes that Defendant's methodology is not called for by any Medicare statute, regulation or manual provision.

Defendant's argument, that vacation, sick and holiday time is unrelated to patient care, is not persuasive.  Even considering its limited scope of review, the Court finds that the HCFA's calculation is arbitrary, capricious and an abuse of discretion. Therefore, the Court overturns Defendant's determination concerning nursing salary costs.  The Board correctly determined that using the correct calculation results in an exception amount of $62.13 for nursing salaries, $15.80 per treatment more than the $46.33 approved by Defendant.

B.   Additional salaries

Defendant granted excess labor costs only for nursing labor, not for the other labor costs Plaintiff contends it incurs in

16

caring for its atypical patients.  The final decision stated that, while Plaintiff "identified its actual and projected costs," it "failed to identify or document the incremental costs associated with the additional items or services rendered."  AR 11. Concluding that Plaintiff failed to provide written justification supporting its higher labor costs, Defendant denied all additional labor costs Plaintiff incurred for nursing supervision, unit assistants, a clinical dietician and a physician medical director.

Plaintiff's contention, that its non-nurse salary costs are attributable to its atypical service intensity and thus should be reimbursed, rests largely on its argument that "directly attributable" does not require a provider to link the incremental labor costs at issue with its atypical patient mix.  That argument, however, is unpersuasive; it again ignores the deference this Court must give to Defendant's interpretation of the regulations.

Plaintiff points to evidence that it claims shows that its excess labor costs are directly attributable to its atypical patient population, but that evidence is not clear and convincing or objective.  Rather, it consists of conclusory statements that, because Plaintiff sees more atypical patients, it has higher management and administrative salary costs.  While it seems likely that such is the case, Plaintiff failed to provide data to demonstrate that increased direct nurse service hours also required increased management and administrative support.

Defendant's decision regarding non-nursing labor costs was not arbitrary, capricious, unreasonable or contrary to the law, and, therefore, it cannot be overturned.

United States District Court

For the Northern District of California

17

**United States District Court**
For the Northern District of California

C.   Employee benefits

Plaintiff sought to recover employee benefits at the level it pays: 24.59 percent of total salary.  Defendant, however, found that Plaintiff failed to prove that any benefit percentage in excess of the 18.7 percent national average is attributable to Plaintiff's atypical patient mix.  Therefore, Defendant limited Plaintiff's employment benefit reimbursement to the 18.7 percent national average.  Plaintiff contends that this is improper for several reasons, none of which is persuasive.

Plaintiff relies on University of Cincinnati v. Shalala, 867 F. Supp 1325 (S.D. Ohio 1994).  In University of Cincinnati, the court found that, because the plaintiff did not demonstrate that its atypical patient mix exacerbated its employee benefits, it was not arbitrary, capricious, an abuse of discretion or contrary to law for the Secretary of Health and Human Services to limit the plaintiff's fringe benefits reimbursement to the national benefits average.  867 F. Supp. at 1331.  But the court did find that the Secretary's unjustified use of 18.7 percent as the national average was arbitrary and capricious; the figure had not changed for over a decade.  Id. at 1332.  The court remanded the question to HCFA to determine and apply a national benefits average that was "more appropriately time-based."  University of Cincinnati v. Shalala, 1995 WL 599188 (S.D. Ohio 1995).

Defendant reports that, on remand, the HCFA re-evaluated the 18.7 percent employee benefits rate and found it still valid.  See Palomar Medical Center, CCH Medicare and Medicaid Guide, ¶ 56,546 (CMS Admin. Dec. Oct. 2, 1997).  Plaintiff does not deny this

18

United States District Court

For the Northern District of California

finding.   Nonetheless, it argues that, because the HCFA's re-evaluation decision was not part of the administrative record, it is not properly before the Court.   Judicial review of agency action is generally limited to review of the record on which the administrative decision was based.   The Ninth Circuit, however, has recognized exceptions to that general rule, including reviewing additional material to explain the basis of the agency's actions and the factors the agency considered.   Love v. Thomas, 858 F.2d 1347, 1356 (9th Cir. 1988).   The Court considers the HCFA's re-evaluation of the 18.7 percent national average.   Plaintiff's argument, that the 18.7 percent employee benefits rate is arbitrary and capricious because it is stale, is unavailing.

Plaintiff has failed to prove that Defendant's decision on this point was arbitrary, capricious, unreasonable or contrary to the law.   Nor did Plaintiff show that Defendant's decision was unsupported by substantial evidence.   Therefore, the Court cannot overturn Defendant's determination of employee benefits costs.

III.   Overhead costs

Plaintiff projected that it would incur $239.66 in overhead costs per treatment, almost $200 above the composite rate, for laundry and linen, extra square footage, equipment depreciation and administrative and general costs.   The Administrator found that Plaintiff failed to offer documentation, other than general statements, to link its higher overhead costs to its atypical patient mix.   Because Plaintiff did not directly attribute its overhead costs to its atypical patient mix, Plaintiff's exception request for overhead costs was denied in its entirety.

19

**United States District Court**
For the Northern District of California

Plaintiff contends that this decision was erroneous because Plaintiff proved that all of the increased overhead costs it sought were "directly attributable" to the atypical services it provides to its atypical patients.  Plaintiff, however, uses a different definition of "directly attributable" than that employed by Defendant, and, as noted above, Plaintiff fails to show that Defendant's definition, placing a high burden on providers, is not entitled to deference.

Section 2725.1 of the Provider's Reimbursement Manual provides:

> Overhead Costs -- There are infrequent instances, (i.e., hepatitis) when an isolated area is required and where higher overhead costs may be justifiable.  For those costs to be considered under this exception criteria, documentation must be submitted that identifies the basis of higher overhead costs, the specific cost components to be impacted and the incremental pretreatment costs.  General statements regarding a facility's higher overhead costs are not acceptable in meeting the criteria.

Plaintiff argues that, to the extent this provision requires incremental cost attribution with respect to overhead costs, it must be disregarded as inconsistent with ESRD payment regulations. But it fails to show that this provision, or requiring incremental cost attribution with respect to overhead costs, is inconsistent with ESRD payment regulations.  Although this provision in the manual "does not have the binding effect of law or regulation," the Court considers it as "clarifying existing regulations." National Medical Enterprises v. Bowen, 851 F.2d 291, 293 (9th Cir. 1988).

Relying on County of Los Angeles v. Sullivan, 969 F.2d 735, 740-41 (9th Cir. 1992), Plaintiff further argues that Defendant's denial of all of its overhead costs violates the prohibition

20

United States District Court

For the Northern District of California

against cost-shifting.  By statute, Defendant is required to promulgate reimbursement regulations which assure that the necessary costs of efficiently delivering covered services to patients covered by Medicare "will not be borne by individuals not so covered."  42 U.S.C. § 1395x(v)(1)(A).  County of Los Angeles, however, is distinguishable.  Plaintiff's argument that Defendant violated the prohibition on cost-shifting is not persuasive. Nonetheless, as the Court discusses below, denying all administrative and general costs is arbitrary and an abuse of discretion, even if it does not violate the prohibition on cost-shifting.

A.  Laundry and linen

Plaintiff contends that it demonstrated that it uses more linen and laundry than a typical dialysis facility because of its atypical patients.  In its exception request, it stated:

> Nearly half of our patients have problems with bowel/bladder disfunction; half of our patients required dressing changes at some time during the treatment; half of our patients were dialyzed with some sort of vascular access other than the normal fistula which resulted in excess blood on surfaces on the bed or chair; 79% of our patients were beset with vomiting during the treatment.  All of these atypical problems resulted in the use of 6 to 10 times more linens than the typical dialysis population.  Therefore, our laundry and linen amount, which may be 6 to 10 times that of the typical cost for this item, is justified.

AR 540.

Defendant points out that this general statement does not quantify the extent to which increased costs were incurred, nor does it provide detailed objective evidence and specific cost components.  While it seems likely that Plaintiff indeed incurs atypical laundry and linen expenses, it does not identify any

21

United States District Court

For the Northern District of California

evidence in the record quantifying these costs.  Instead, it argues that Defendant's approval of its request for excess supply costs demonstrates that Defendant's denial of its request for excess linen and laundry costs is arbitrary.  Plaintiff's request for excess supply costs, however, contains evidence quantifying Plaintiff's additional costs for gloves and linking the additional cost to Plaintiff's atypical patients.  While Plaintiff contends that its cost for linen and laundry was $23.55 per treatment, it fails to analyze or break down the specific cost components, or the corresponding incremental per-treatment costs, as required.

The Court finds that Defendant's decision denying an exception for laundry and linen costs was not arbitrary, capricious, an abuse of discretion or contrary to law.

B.  Square footage

Plaintiff argues that it demonstrated that its dialysis unit requires more space than a typical dialysis unit because of the atypical nature of its patient population.  For example, many of its patients have psychological and behavior disorders which necessitate that they be isolated from the remaining patients; other patients require isolation for medical reasons, such as chronic infection or acute complications such as diarrhea. Therefore, Plaintiff has a separate isolation room, which contains a bed for treatment for these patients.  Other patients are unable to sit up in a dialysis chair and require a bed, which takes up more space in a dialysis area than a chair.

Defendant does not dispute that Plaintiff's ESRD unit utilizes more space than a typical unit.  Nonetheless, Defendant denied

22

Plaintiff any excess overhead cost based on its extra square footage because Plaintiff failed to quantify specifically the difference in space, such as the space needed for the isolation room or for a bed as opposed to a dialysis chair.

Plaintiff does not argue that, with respect to excess square footage costs, it identified "the basis of higher overhead costs, the specific cost components to be impacted and the incremental pretreatment costs," as required by section 2725.1.B.4 of the Provider's Reimbursement Manual.  Rather, it again argues that Defendant is requiring providers to comply with a too-stringent definition of "directly attributable."  Defendant has put in place an exacting standard providers must meet in order to receive an exemption; this standard applies to overhead costs based on square footage.  As explained above, because Defendant's standard is neither contrary to the plain language of the regulation nor to Congressional intent, the Court must afford it deference. Defendant's decision denying an exception for overhead costs based on square footage was not arbitrary, capricious, an abuse of discretion or contrary to law.

C.   Capital equipment depreciation

Plaintiff argues that it demonstrated that it utilizes more expensive equipment than a typical unit due to its atypical patient population; unlike typical dialysis patients, Plaintiff's atypical patients routinely require the use of EKG machines, infusion pumps for antibiotics or chemotherapy and cardiac monitors.  Again, Defendant does not dispute that Plaintiff incurred higher costs for this equipment.  Defendant instead responds that, as noted by the

23

intermediary, Plaintiff failed to submit "an incremental analysis of the breakdown of the equipment and the related depreciation expense which are required for typical and atypical patients."  AR 1002.  Plaintiff does not refute this.

The Court finds that Defendant's decision denying an exception for overhead costs based on capital equipment depreciation was not arbitrary, capricious, an abuse of discretion or contrary to law.

D.  Administrative and general

Plaintiff explains that administrative and general costs are those related to the operation of health care facilities and include such items as accounting, billing, administrative salaries and insurance.  Plaintiff contends that it is entitled to additional administrative and general costs as part of its exception request because its ESRD unit incurs increased direct costs as a result of its treatment of atypical patients.  According to Plaintiff, under Medicare rules, administrative and general costs follow direct costs and, therefore, it did not need to make an additional showing to link the administrative and general costs to the atypical patient services provided.

Defendant disagrees.  He argues that requiring Plaintiff to prove independently that its excess administrative and general costs are directly attributable to its atypical patient mix is not contrary to the law.  The Court finds that Defendant's decision denying any exception for administrative and general expenses overhead expenses is arbitrary and an abuse of discretion.  As the Board explained, administrative and general costs are residual costs, not specifically and reasonably identified with any

24

United States District Court

For the Northern District of California

particular area of a provider's operation.  Some of Plaintiff's increased administrative and general costs are undoubtedly, and undisputedly, directly attributable to its atypical patient population.

Unlike Defendant's refusal to grant any exception for excess administrative and general costs, the Board's approval of a 56.5 percent overhead exception amount for all approved direct cost exception amounts is reasonable.  The Board based this decision on its reasonable assumption that the $47 composite amount for overhead costs represents general and administrative costs incurred by ESRD facilities and was calculated in accordance with long-standing Medicare principles.  Thus, it would be reasonable and non-arbitrary for Defendant to award Plaintiff a 56.5 percent overhead exception amount for all approved direct cost exception amounts, which would amount to $50.63.

The Court remands this action to Defendant to determine an exception for administrative and general costs that is reasonable and non-arbitrary.

IV.  Granting less than $250 per treatment

Lastly, Plaintiff argues that it is entitled to continue receiving $250 per treatment, as it has since 1987.  Noting that it continues to serve the same atypical patient mix, Plaintiff contends that its costs have increased since 1987 and, therefore, Defendant's decision to reduce Plaintiff's payment below $250 per treatment was erroneous, arbitrary and capricious.

Defendant responds first that Federal Rule of Evidence 408 requires exclusion of the evidence of the $250 payment rate because

United States District Court

For the Northern District of California

1   that rate was awarded as the result of a settlement.  Rule 408

2   provides that evidence concerning an offer to compromise, or

3   acceptance of an offer to compromise, is not admissible "to prove

4   liability for or invalidity of the claim or its amount."  Plaintiff

5   contends that the evidence is admissible because it is offered to

6   show that Defendant's decision was arbitrary and capricious, not to

7   prove liability.

8        Even if it is considered, the $250 rate does not assist

9   Plaintiff.  As Defendant notes, there is nothing in the regulatory

10  scheme that allows an exception rate to have any force after the

11  applicable period expires.  Plaintiff must prove by "clear and

12  convincing objective evidence" that its excess costs are reasonable

13  and allowable and directly attributable to its atypical patient

14  mix.  Plaintiff cannot prove that by pointing out that it

15  previously received $250.

16       Therefore, the Court will not overturn Defendant's decision on

17  this ground.

18                              CONCLUSION

19       For the foregoing reasons, Plaintiff fails to demonstrate that

20  Defendant's final decision was arbitrary, capricious, an abuse of

21  discretion or otherwise not in accordance with the law, except with

22  respect to Defendant's calculation for nursing salary costs and his

23  denial of all administrative and general costs.  Therefore, the

24  Court affirms the final decision on Plaintiff's ESRD rate exception

25  request in part and overturns it in part.

26       Both Plaintiff's Motion for Summary Judgment (Docket No. 13)

27  and Defendant's Cross-Motion for Summary Judgment (Docket No. 17)

28                                   26

are GRANTED IN PART and DENIED IN PART.  Specifically, the Court
finds that Plaintiff is entitled to an exception amount of $62.13
for nursing salaries, $15.80 per treatment more than the $46.33
approved by Defendant.  This raises Plaintiff's Medicare
reimbursement rate to $228.61 per treatment.  In addition, the
Court finds that Plaintiff is entitled to an exception for its
administrative and general overhead costs.  It would be reasonable
for Defendant to award Plaintiff a 56.5 percent administrative and
general overhead exception amount, totaling $50.63, for all
approved direct cost exception amounts.  The matter, however, is
remanded to Defendant to calculate an exception for administrative
and general overhead costs that is reasonable and non-arbitrary.
Judgment shall enter accordingly.  Each party shall bear its own
costs.

    IT IS SO ORDERED.

Dated: 10/17/06

_____
CLAUDIA WILKEN
United States District Judge